[No. 18672. Department One. November 15, 1924.]

JOHN EHORN *et al., Plaintiffs and Cross-Appellants*, v.
NORTHWEST MAGNESITE COMPANY,
*Defendant and Appellant.*[1]

NUISANCE (9, 10)—INJURY TO REAL PROPERTY—LOSS OF CROPS—
DAMAGES—PERMANENT AND TEMPORARY INJURY. In an action for
damages to a farm from the deposit of dust by a magnesium plant
deleterious to plant life, it is proper, in addition to an award for
depreciation of the productiveness and value of the land, to allow
damages for loss of crops and sums justifiably expended in at-
tempting to raise crops during the two preceding years.

SAME (2, 5)—INJUNCTION—GROUNDS—EVIDENCE—SUFFICIENCY. In
an action to enjoin the operation of a magnesium plant which had
deposited dust on adjacent farm lands deleterious to plant life, in-
junctive relief is warranted, preventing operation of the plant un-
less efficiently operated with dust arresting devices, notwithstanding
such devices had already been installed, where there was evidence
that, through failure to operate the devices efficiently, more than
8% of the dust was being permitted to escape and fall on the land.

NEW TRIAL (40)—GROUNDS—NEWLY DISCOVERED EVIDENCE— SUF-
FICIENCY AND PROBABLE EFFECT. A new trial for newly discovered
evidence as to the damage done to farming land by the deposit of
substances deleterious to plant life is properly denied, where the
trial judge visited the land and inspected the crops, and it is highly
probable a different judgment would not result.

Cross-appeals from a judgment of the superior
court for Stevens county, Ronald, J., entered November
8, 1923, upon findings in favor of the plaintiffs, in an
action for an injunction and for damages, tried to the
court. Affirmed.

*Voorhees & Canfield (Cannon & McKevitt, Davis,
Heil & Davis, Louis A. Conyard,* and *E. D. Germain,*
of counsel), for plaintiffs and appellants.

*M. F. Gose, W. Lon Johnson,* and *Wentz & Bailey,*
for defendant and appellant.

[1]Reported in 230 Pac. 419.

PARKER, J.—The plaintiffs, Ehorn and wife, commenced this action in the superior court for Stevens county against the defendant, magnesite company, seeking recovery of damages claimed to have been suffered by them by the unlawful releasing from the stacks of its magnesite plant into the surrounding atmosphere of large quantities of magnesium oxide and other deleterious substances destructive of plant and animal life in the form of dust, thereby causing such dust to settle upon their farm in large quantities, to their damage by the death and sickness of their stock, the destruction of their growing crops and the lessening of the productiveness and value of their farm. Plaintiffs also sought injunctive relief against defendant to prevent future like damage. The cause came on for trial upon the merits before the superior court sitting without a jury, resulting in a judgment and decree awarding to plaintiffs damages in the sum of $9,932, and also injunctive relief in a large measure, but not wholly, as prayed for. Defendant appealed to this court, insisting that the damages so awarded are excessive, and that the injunctive relief so awarded is not warranted by the facts of the case. Thereafter plaintiffs appealed to this court, insisting that the damages so awarded are not sufficient in amount to compensate them, and that the injunctive relief so awarded falls short of protecting them from future threatened damage.

For many years past, and at all times in question, plaintiffs have been the owners of, and have been farming, a farm of approximately 106 acres adjoining the town of Chewelah on the south, in Stevens county. During the year 1917, the defendant constructed and commenced the operation of its magnesite plant a short distance south of plaintiffs' farm. Sometime later the

capacity of the plant was very much enlarged, and soon thereafter by its operation began releasing in large and increasing quantities through its several stacks the deleterious dust which fell upon plaintiffs' farm. The dust so released from defendant's plant had not fallen upon plaintiffs' farm in such quantities as to commence to do serious damage until about July or August, 1919, nor was the full extent of the deleterious effect of the dust upon plaintiffs' stock, crops and land rendered apparent until later. Thereafter the accumulation of the dust upon plaintiffs' farm from the operation of the plant was such that a number of plaintiffs' stock died and many others were rendered sick and much lessened in value from pasturing upon the farm and in doing so eating of the pasturage covered by the dust emanating from the plant. The falling of the dust upon plaintiffs' farm was also such that, during the year 1920, early in the season, the growing crops thereon were largely destroyed thereby. The falling of the dust upon plaintiffs' land from the operation of the plant during the later years prior to the trial of this action had like effect and caused like destruction of the crops attempted to be raised by plaintiffs during those years. Finally it became apparent that, apart from the continuance of the falling of the dust upon plaintiffs' crops, the accumulation of the dust and the encrustation thereof had caused the land to become very much deteriorated in fertility and value.

The trial court awarded to plaintiffs' the sum of $1,150 as damages for loss of a number of their stock by death and for depreciation in value of a number of their stock, as being caused by the deleterious effect of their eating of vegetation on their farm while the same was covered with the dust emanating from the

plant. It is argued in behalf of defendant that the evidence does not warrant any recovery for loss or depreciation of value of stock, and that, in any event, the award made by the court in that behalf is excessive. This contention presents, as we view the record, nothing but questions of fact as to the cause of the deaths of and the injury to the stock, the extent of the damage resulting therefrom, and the extent to which plaintiffs may have performed, or failed to perform, their duty looking to the minimizing of their damages by proper care of the stock. A reading of the evidence convinces us that it does not preponderate against the court's conclusion touching this item of damage.

The trial court awarded to plaintiffs the sum of $2,643 for loss of and damage to their crops during the years 1919 and 1920. Contention is made in behalf of defendant that this award is unwarranted by the evidence and, in any event, excessive. Again, we answer that this presents only questions of fact, as to which we are convinced the evidence does not preponderate against the trial court's conclusion upon this term of damage.

During the years 1921 and 1922, as found by the trial court, plaintiffs expended $569 and $620, respectively, in attempting to raise crops upon their farm during that year, which crops were practical failures because of the falling dust emanating from the plant; that is, such sums were so expended without profitable returns which would have been otherwise enjoyed by plaintiffs. The trial court awarded plaintiffs recovery in these sums for the damage so inflicted upon the crops during those years. These awards, we think, were warranted by the evidence.

The trial court awarded to plaintiffs the sum of $5,000 as damages suffered by them by reason of the

deterioration and rendering of the land of their farm less productive by reason of the accumulation of the deleterious dust; that is, that sum was awarded as the lessened value of the farm by reason of the accumulations of the deleterious dust apart from the damages suffered by injury to plaintiff's stock, injuries to their crops of 1919 and 1920, and their reasonable expenses incurred without profitable returns in the years 1921 and 1922. Observations made by the trial judge in his written opinion disposing of the cause upon the merits, his written opinion disposing of defendants' motion for new trial, and in his findings of fact, render it plain that he regarded the farm as worth $20,000 in August, 1919, and that by reason of the falling thereon of the dust emanating from defendant's plant up to the time of the trial, the land of the farm had been damaged to the extent of one-fourth of its value. We think it sufficient to say that the evidence convinces us that this award is well supported thereby.

Contention is made in behalf of defendant that these several awards of damage constitute, at least in some measure, twice awarding of damages for items of alleged wrongdoing by defendant. The argument is, in substance, that plaintiffs should not have been awarded damages for loss of their crops and the sums unprofitably expended in attempting to raise crops during the period from August, 1919, up to the time of the trial, and at the same time awarded damages for the depreciation of the productiveness and value of the land itself by the accumulation of the dust thereon. The trial court found, and we think was warranted in finding from the evidence, that the plaintiffs were justified in attempting to raise crops during these years. Indeed, the argument of counsel for defendant seemingly proceeds principally upon the theory that

plaintiffs could profitably farm and crop their land during all these years. This is manifestly just what plaintiffs were in good faith attempting to do, and the evidence seems to us to have fully justified them in such attempts on their part. This award for damage to the land itself will, of course, take the place of any award of damage for future impairment of crops by reason of its depreciated productiveness because of present accumulation and encrustation of the dust, but should not, we think, be considered as any additional award for loss of crops incurred while the dust was falling on the crops and plaintiffs were in good faith endeavoring to raise crops, before being fully advised as to the injury to the land. We think, under all the circumstances, that the trial court did not erroneously award damages more than once for the same item of wrongdoing by defendant.

Plaintiffs contend upon their cross-appeal that the award of damage for depreciation of the value of their land is insufficient to compensate them in that behalf. We deem it sufficient to say that this contention, like defendant's contrary contention, only involves questions of fact, as to which we think the evidence does not preponderate against the trial court's conclusions.

The injunction portion of the decree reads in part as follows:

"Said defendant and each, every and all of its officers, agents, assistants, servants, and employees be and they hereby are perpetually enjoined, prohibited and restrained from operating defendant's said plant, unless the same shall be operated in connection with and by means of a dust precipitation device or devices, which shall and actually does precipitate and prevent the release into the atmosphere of at least ninety-two per cent of the dust passing out of the kilns of defendant's said plant. And the said defendant, its officers, agents, assistants, servants and employees are

forever enjoined, prohibited, and restrained from releasing into the atmosphere at defendant's said plant, any dust in excess of eight per cent of the amount of dust passing from the kilns of defendant's said plant. . . . Said plaintiffs shall and they are hereby given the right at any time to apply to the court for a further injunction herein modifying this decree as to the amount of dust emanations permitted to be thrown off by the defendant's said plant (at said time) in the event that the operation of the defendant's said plant, operating under this decree, and in accordance with its terms, shall then be found to be further injuring the plaintiff's said land or the crops growing thereon.''

After the commencement of the action, and before the trial, the defendant had installed in their stacks certain dust arresting devices which were capable of arresting and preventing the escape of the dust to the extent that a very small percentage thereof would escape, probably one or two per cent, if such devices were installed and operated with great care, and would ordinarily even if moderately efficiently operated, prevent the escape of at least 92% of the dust passing from the kilns. The trial court evidently proceeded upon the assumption that the evidence warranted the belief that if 92% of the dust passing out of the kilns into the stacks should be arrested and prevented from escaping, there would not then escape from all of the stacks of the plant then in commission, though the whole plant be in full operation, sufficient dust to materially injure the crops or further injure the land of plaintiffs. Counsel for defendant contend in this connection that by reason of the installing of these dust arresting devices in the stacks of the plant there was no longer any further menace to plaintiff's crops or land. This contention might be considered as well founded, if it were not for the fact, as the trial court

believed and was warranted in believing from the evidence, that the dust arresting devices were, at the time of the trial and for some time prior, not even moderately efficiently operated, and that a larger quantity of dust than 8% was being permitted to escape and fall upon plaintiff's land. This, we think, created such a situation that it cannot be said that there was, because of the installing of the dust arresting devices, no further cause for injunctive relief. We think, under all the circumstances, the contention made by counsel for defendant that injunctive relief was not warranted at the time of the trial is not well founded, and that the trial judge did not err to its prejudice in awarding such relief.

The contention of plaintiffs upon their cross-appeal that the injunctive relief should have gone farther and restrained defendant from allowing not to exceed a much smaller percentage of the dust to escape, we think is not well founded in view of all the circumstances. In other words, we cannot say that the evidence preponderates against the trial court's conclusion that the escape of 8% of the dust will, as the facts now appear, materially further injure plaintiff's crops or land. However, the above quoted language of the injunction portion of the decree leaves that question open for further determination and a modification of the decree in that particular, should it appear in the future that the quantity of dust which by the terms of the decree defendant may allow to escape should prove to work injury to plaintiff's crops or land.

After the announcement of the decision of the trial judge upon the merits in the form of an extended opinion reviewing the facts in great detail, counsel for the defendant moved for a new trial, which later was urged upon the ground of newly discovered evi-

dence. Many affidavits in support of and in resistance of the motion were read in evidence. They related almost wholly to the condition of the crop as it appeared upon plaintiff's land during the spring and summer of 1923; the trial having occurred in April, 1923. By agreement of counsel at the time of the hearing of the motion for new trial, the trial judge visited the land and inspected the crops thereon, as he had done during the trial. Soon thereafter, on September 27, 1923, he again rendered a decision in writing, reviewing in great detail the facts placed before him upon the hearing of the motion for new trial, and entered an order denying the motion. Formal findings were then made, and a final judgment and decree entered as above noticed. We think it sufficient to say that the trial judge did not err in refusing a new trial. Indeed, it seems to us highly probable, as it manifestly did to the trial judge, that a new trial would not result in a different judgment and decree.

This has been a long drawn out and strenuously contested controversy. The statement of facts contains over 1,800 pages of typewriting, besides 79 separate exhibits. Take it all in all, it is one of those cases in which the trial judge is particularly favored in opportunity for determining the right, as compared with our opportunity, looking only at the cold written record. We feel warranted in observing that seldom has a case ever come to us the record of which evidences such a high degree of painstaking care on the part of a trial judge in his review and weighing of the great number of facts and circumstances presented to him. We are fully convinced that the record before us discloses no cause for our interfering with the conclusions of the trial judge so painstakingly arrived at.

The judgment and decree are in all things affirmed.

Neither party will be awarded as against the other party any costs or disbursements incurred in this court.

MAIN, C. J., MACKINTOSH, TOLMAN, and HOLCOMB, JJ., concur.